## In re ARKIN DRESS CO., Inc.

### Petition of SHAINE.

(Circuit Court of Appeals, Second Circuit. May 23, 1918.)

No. 110.

1. BANKRUPTCY ☾140(2)—RECLAMATION OF MERCHANDISE—IDENTIFICATION.

   Where bankrupt, shortly before bankruptcy, purchased merchandise, obtaining credit through false representations, sellers had a right to reclaim merchandise so long as it remained in the hands of the bankrupt, and could reclaim proceeds of the sale so long as they could identify the fund.

2. BANKRUPTCY ☾212—RECLAMATION OF MERCHANDISE—IDENTIFICATION OF FUND—SUFFICIENCY OF EVIDENCE.

   On petition for reclamation of merchandise fraudulently obtained by bankrupt and sold shortly before bankruptcy, evidence *held* insufficient to trace proceeds of sale into hands of trustee.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of the Arkin Dress Company, Incorporated, bankrupt. Reclamation proceeding by Heyman Cohen & Sons. Report of special master, recommending denial of petition for reclamation, reversed by District Court, and order entered directing trustee to pay over to Heyman Cohen & Sons, or their attorneys, the sum of $1,283.25. On petition to revise the order by Maurice L. Shaine, as trustee. Order reversed, and motion to confirm report of special master granted.

The alleged bankrupt is a corporation organized under the laws of the state of New York, of which Louis Arkin, Jr., was the president and general manager. On December 29, 1916, a petition in involuntary bankruptcy was filed against it and on January 11, 1917, an order was entered adjudicating it an involuntary bankrupt. On December 30, 1916, the revising petitioner was appointed receiver, and on February 21, 1917, trustee of the bankrupt.

Rosenberg & Ball, of New York City (David W. Kahn, of New York City, of counsel), for revising petitioner.

Morrison & Schiff, of New York City, for respondents Heyman Cohen & Sons.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge. A reclamation proceeding was instituted by Heyman Cohen & Sons, jobbers in woolen and dress goods in the city of New York. Their petition asked for an order requiring the receiver to turn over the sum of $2,085; that amount representing the proceeds of certain merchandise sold by them to the bankrupt and resold by the latter to one Rosenzweig.

The reclamation petition alleged that the petitioners had sold to

the bankrupt certain merchandise, consisting of 1,737⅝ yards of blue serge cloth, being induced to do so by the false and fraudulent representations made by Louis A. Arkin, Jr. The matter was referred to a special master, who recommended the denial of the petition of the reclaiming creditors, basing his recommendation upon the ground that the proceeds of the goods so sold had not been traced into the hands of the receiver. Motions were then brought on, in the District Court, to confirm and to reverse the report; and the District Judge decided that the special master had erred in his conclusions and that the reclamation should be granted. An order was accordingly entered, directing the trustee to forthwith pay over to Heyman Cohen & Sons, or their attorneys, out of the moneys in his hands as trustee, the sum of $1,283.25. It is this order that we are now asked to revise.

It appears that the Arkin Dress Company, on December 17, 1916, represented to Heyman Cohen & Sons, the reclaiming creditors, that it had an order from John Wanamaker for a quantity of dresses requiring 2,300 yards of blue serge cloth. The Dress Company also represented that it had on deposit at that time with the Union Exchange National Bank at least $3,000. A check in the sum of $2,210.96 was delivered by the bankrupt to Heyman Cohen & Sons to pay an indebtedness due from it to Heyman Cohen & Sons, not then due, but which it was necessary to pay to get more credit. It also, and for the purpose of inducing Cohen & Sons to sell and deliver to it the blue serge cloth above referred to, represented falsely that its financial condition was the same or better on December 27 than it was on September 9, 1916, there having been a financial statement on that date. In reliance on these representations Heyman Cohen & Sons delivered to the bankrupt 1,737⅝ yards of blue serge cloth, valued at $2,085.

Before selling the cloth to the bankrupt the claimants inquired of Woods' Commercial Agency as to the bankrupt's financial condition. They were informed that on December 11, 1916, the president of the bankrupt corporation submitted an affidavit which he now swears was false. It also appears that its bank credit on December 27, instead of being $3,000, as represented, was only $54.90. The petition in involuntary bankruptcy was filed two days after the delivery of the blue serge. The president of the bankrupt corporation swears that this merchandise was delivered in the original packages by the bankrupt the day after it received them to one Rosenzweig, who paid to the bankrupt the sum of $2,500. He also swears that of this amount $2,100 was turned over in currency by him to the receiver in bankruptcy. It clearly appears that this merchandise was obtained from the claimants by means of false representations made to them by the bankrupt directly, as well as through the Woods' Commercial Agency. The representations were false, and they were relied upon by the claimant.

[1] The claimants had a right to reclaim the merchandise so long as it remained in the hands of the bankrupt. They could also claim the proceeds of the sale to Rosenzweig so long as they could identify the fund. The testimony was that the bankrupt sold to Rosenzweig

at 65 per cent. of the cost. Computed on that basis, the bankrupt received $1,553 for the Heyman Cohen & Sons serge. But as Rosenzweig paid him altogether $2,500 for the total merchandise turned over, and retained out of that $415 for himself, the proportionate loss to the claimants out of the transaction amounted to $269.75. This left $1,283.25 as the sum due the claimants, and the District Judge has entered an order directing the receiver to turn over that amount to the claimant.

[2] The trustee claims that this order of the District Judge was erroneous, in that it has not been shown that the proceeds of the identical goods sold by Heyman·Cohen & Sons were ever paid over to the receiver. The sole question in the case is whether the claimants have identified the fund. The testimony they rely upon is that of Louis Arkin, Jr., and if it can be believed the proceeds of the goods have been traced into the hands of the trustee, and the order of the District Judge is right. If the question were simply one between the vendor and the vendee, the testimony of Arkin might be accepted; but the decision of the question affects the rights of all the creditors of the bankrupts' estate, and if the fund in its entirety is to be withdrawn, and turned over to Heyman Cohen & Sons, all other creditors being excluded therefrom, the evidence should not be doubtful, but should be reasonably conclusive. We are unable to regard the testimony as at all persuasive. Arkin testified, it is true, that he sold the identical goods his company received from the claimants to one Rosenzweig, and that he received from him $2,500. But he stated that that sum represented also somebody else's goods; that he did not know how much he received for the claimants' goods; that he did not know how much other merchandise he sold or what he received for it. He admitted, however, that he got 65 per cent. of the amount he paid the claimants for the goods. He admitted that the statement given to the Woods' Commercial Agency on December 11, 1916, and which he had signed was not true. He admitted that on December 27, 1916, he had no unfilled order from John Wanamaker which required about 2,300 yards of cloth, and denied that he had represented that he had such an order, although the testimony of the claimants showed that he had made such a representation. He admitted that he knew his company was insolvent when he bought the serges from Heyman Cohen & Sons, and that for perhaps three or four weeks prior to that purchase and prior to the failure his company had ceased to do any making of dresses, and was simply buying merchandise and selling it in the original packages at a loss, getting for it from 50 to 65 per cent. of what it cost; that in the month or two prior to the failure he had bought more than $40,000 worth of goods, which he had sold in the manner above indicated; that he did not know whose goods he sold to Rosenzweig at the time he sold him the claimants' goods. In answer to the question, "Who were you doing business with at that time?" he answered, "I don't remember exactly." This man is not entitled to belief. He is revealed by his own testimony as thoroughly unscrupulous, dishonest, and unworthy of credence. Whether the money he turned over to the trustee was money which

came from the sale of the claimants' goods, or from the sale of some one else's goods, is not proven.

The order of the District Court is reversed, and the motion to confirm the report of the special master is granted.